UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 18 Cr. 497 (DLC)

ARNALDO URBINA SOTO,

Defendant.

------------------------------x

New York, N.Y.
October 3, 2024
3:00 p.m.

Before:

HON. DENISE L. COTE,

District Judge

APPEARANCES

DAMIAN WILLIAMS,
United States Attorney for the
Southern District of New York
BY: DAVID ROBLES
JACOB H. GUTWILLIG
Assistant United States Attorneys

CARLA M. SANDERSON
VALERIA GOTLIB
Attorneys for Defendant

ALSO PRESENT:

GABRIEL MITRE, Spanish Interpreter
DAGOBERTO ORRANTIA, Spanish Interpreter

(Case called)

THE DEPUTY CLERK: Is the government ready to proceed?

MR. ROBLES: Yes. Good afternoon, your Honor. David Robles and Jacob Gutwillig for the government.

THE DEPUTY CLERK: For the defendant.

MS. SANDERSON: Good afternoon, your Honor. Carla Sanderson and Valerie Gotlib for Arnaldo Urbina Soto.

THE COURT: We are assisted by an interpreter who is certified to interpret between Spanish and English.

Mr. Urbina Soto, will you please advise me if you have any difficulty understanding what is being said through the interpreter?

THE DEFENDANT: Understood, your Honor.

THE COURT: Thank you.

I very much apologize that I was unable to be here last week. I'm afraid that COVID caught up with me again. It would have been my desire to be here because I know what an important day this is for everyone involved in this proceeding, so I apologize for my absence last week.

We are here for a sentencing of Mr. Urbina Soto.

Let me ask defense counsel, we already did that part last week or two weeks ago, I don't have my notes, but my recollection is that the presentence report had been translated to the defendant and it had been discussed between the defendant and defense counsel; am I right?

MS. SANDERSON: Yes, that's correct, Judge.

THE COURT: That's right. And we dealt with corrections to the presentence report?

MS. SANDERSON: We did.

THE COURT: Are there any additional corrections you'd like me to order?

MS. SANDERSON: No, your Honor.

THE COURT: Thank you.

I believe I said at that time that the presentence report is made part of the order in this case, and it will be placed under seal and available to counsel on appeal if there is an appeal.

So let me describe all of the materials that I have received and reviewed in connection with this sentence. Obviously there was the presentence report. I have the government's letter of September 11th. I have the underlying defense submission, which we've already discussed, but that is on the prior occasion, with its many attachments. It is dated August 30th. I also have letters from defense counsel of September 12th and September 23rd. I found the September 23rd letter from defense counsel very helpful and I thank them for that.

We have an agreement that the offense level is 41 and the criminal history category here is I. Counsel agreed to that. The presentence report is consistent with that and I

adopt it as my own. This leads to a sentencing guidelines range of 324 to 405 months. The presentence report recommends a sentence of 240 months. The government recommends a sentence of essentially 240 months. The defendant seeks a sentence of time served and reflects that is a sentence of roughly 10 years as it calculates the sentence.

Here are some critical facts. The defendant became Mayor of the Yoro Department in Honduras in 2009. He was arrested in 2014, in July 2014, specifically July 27th of that year in Honduras. I have representations that the arrest was for firearms charges. At his trial, evidence of drug dealing was introduced. Ultimately, the conviction in Honduras was for money laundering. That's my understanding of those charges. I'm not quite sure what sentence was imposed. I understand he was in custody from July 27th, 2014 onward.

On March 26, 2019, an arrest warrant was lodged in Honduras based on the U.S. charges that are being prosecuted here. He was extradited on January 31st, 2023, and he pled guilty earlier this year before me in May.

So, to the extent that counsel can enlighten me as to whether any of the period following March 26th, 2019 was being served in Honduras on the Honduras conviction, that would be interesting for me to know.

MS. SANDERSON: Yes, your Honor. He was ultimately -- he appealed his conviction and it was overturned. So the

sentence he had received, it was a 16-year sentence, was ultimately overturned in Honduras. So it's my understanding that none of that time was being served on a Honduran sentence.

THE COURT: Thank you.

So I will find for the record that his time in custody from March 26th, 2019 was pursuant to the U.S. charges.

The defendant was one of four brothers. He is the youngest. One of his brothers has died. It's my understanding that his three older brothers were all involved in the drug trade and the parties' submissions, their sentencing letters describe the conduct of those older brothers and of the defendant. As I mentioned, the defendant became Mayor of the Yoro Department in 2009. There is apparent agreement that the Honduran prosecution was brought about in substantial part because he was not following orders of his coconspirators in the drug trade who did not want him to rerun, or run again, for Mayor of the Yoro Department.

There are arguments being made for a variance. Among those arguments are the time the defendant has already spent in custody, the very harsh prison conditions in Honduras, and arguments about the relative culpability of others involved in the Honduran drug trade and the sentences they have received. Those other sentences include sentences of 45 years, 30 years, 24 years, and 19 years. Those are the principal sentences the parties discuss in their sentencing submissions to me.

In terms of the special conditions of supervised release, it's my understanding that the defendant will be deported or removed from the country after the completion of any term of imprisonment here, but I plan to impose the term of supervision that he must submit to deportation and not unlawfully reenter the country.

Is there any objection to that?

MS. SANDERSON: No objection, your Honor.

THE COURT: I'll hear from the government.

MR. ROBLES: Thank you, your Honor. I'll be very brief.

The government's sentencing submission lays out our position in full. But as set forth in our submission, the government is advocating for a sentence of 20 years, which the government believes appropriately balances the time the defendant has spent in custody, both in Honduras and here in the United States, among other factors against the nature and seriousness of the offense and the other 3553(a) factors that were set forth in the government's submission.

I wanted to focus first on the nature and seriousness of the offense and the defendant's role in particular in that offense because I know that's been a topic that the parties have some disagreement.

There is no dispute in this case that while the defendant was mayor of a department in Honduras, he used his

political power to ensure that drug trafficking in his department could prosper. As the Court noted, he became a mayor in late 2009, and it's undisputed that at least by 2011 — and this is paragraph 43 of the PSR to which there was no objection — the defendant was providing protection to the drug trafficking operation of his brothers based on his authority and his connections to the police, and that between 2011 and 2013, the defendant's brothers and the Cachiros, which was one of the most notorious and violent drug trafficking organizations in Honduras, was receiving multiple shipments of cocaine to the department that the defendant was the mayor of.

It's also undisputed that by 2013, the defendant's involvement in drug trafficking, as the Court noted, had become so well known that the president of the Honduran National Congress, Juan Orlando Hernandez, who was in the defendant's political party and was a close political ally of the defendant, was also involved this drug trafficking, and was about to run for president, told the defendant not to run again because of the public attention that the defendant's drug trafficking had brought and how that could affect Juan Orlando Hernandez's public image as a politician in Honduras. But despite that warning, the defendant got involved in hands-on drug trafficking by January of 2014, that he met with the leader of the Cachiros, Leonel Rivera, to discuss cocaine shipments, hundreds of kilograms of cocaine that were going to

be coming in and out of the department that the defendant was the mayor of, out of Yoro.

And a couple months later he met again multiple times with the leader of the Cachiros, again as Mayor of the Department of Yoro. And in those meetings which are recorded, they were explicitly talking about large-scale drug transactions. They were talking about the connections and the protection that Juan Orlando Hernandez, the soon-to-be President of Honduras, would be able to provide to the Cachiros because of their connection to the defendant. And the videos show the defendant accepting a bribe for that protection.

Your Honor, it's hard to, I think, overstate the seriousness of the conduct in this case, which involved an elected official in Honduras abusing his authority so that drug trafficking could prosper, so that a massive cocaine importation conspiracy could be successful.

Your Honor, it's this type of corruption that destabilizes countries, it erodes public trust in politicians, and it leads to real harm, real harm based on the violence that occurs because of drug trafficking, because the lives that are harmed because of drug trafficking, and as I noted before, based on the lack of public trust or the erosion of public trust in the people they have elected to represent their interests.

There is an argument that was made or has been made in

the defendant's submissions that the defendant was essentially far removed and wasn't a critical part of this conspiracy. Your Honor, we respectfully disagree. The defendant was the mayor of a department where drugs were coming in and out of, where planes full of cocaine were landing, where the defendant knew full well it was happening, and it was happening under his watch and under his protection.

So that's the nature and seriousness of the offense.

As we also noted in our submission, there's a real need for deterrence in this case. The sentence that the government is advocating for would send a strong message that elected officials can't just abuse their authority to allow drugs to come in and out of the country, to send tons, ton quantities of cocaine to the United States.

And so for those reasons, your Honor, unless the Court has any further questions, the government respectfully requests that the Court impose a sentence of 20 years.

THE COURT: Thank you.

Counsel.

MS. SANDERSON: Yes. Thank you, your Honor.

We submit this is a somewhat unique situation where the defendant before you has been incarcerated for such a lengthy period of time, and the question today that we'd like your Honor to focus on is how much additional time is needed from here on out. And your Honor can rely on the track record

over the last 10 years and look to just how severely he's been punished, look to whether he's rehabilitated, which we submit he has been, to come to the conclusion that there's no further incarceration necessary here. He had an excellent track record of behavior here in the United States and in Honduran prison. This is not a fluke, your Honor. He worked hard every day of his imprisonment to make the right decision, to better himself, and to make the right choices in his life.

He had a religious conversion in 2017 and he took that very seriously. This helps guide his decisions from day to day and it will help him guide his decisions when he eventually does get out, as well, your Honor.

When he first got to the U.S., he was taken to Valhalla prison and immediately enrolled in English courses through the BOCES program. He did almost 200 hours of English programming there before being moved to MDC Brooklyn where he works in the kitchen and he received an outstanding performance review, which we submitted to your Honor. It says that he's responsible, reliable, he doesn't complain when people ask him to do more, he comes in on his days off, and he's a great worker who takes initiative and gets along with staff and inmates.

We submit this captures pretty well who he is now, your Honor. It shows he has a positive attitude, which he maintains despite the circumstances he's in. He truly does

want to better himself and he shows that through his actions. When he's at work, he wants to help others he works with, the inmates, the supervisors, and he's largely succeeded over the last 3,721 days he's been incarcerated where he's worked towards who he is now.

When it comes to specific deterrence, we submit he's not the same man who committed the crimes more than 10 years ago. He's in his mid 40s now, your Honor. He's matured, he's evolved through the many years he had been in prison, and he suffered greatly and he's learned his lesson. He's older and wiser. He's not going to leave and commit crimes again.

Aside from these personal changes in growth, the crimes he committed were with this one conspiracy, were together with his brothers. He was not committing crimes before this. He's not a career criminal who needs an extra long sentence to deter him from going back to committing crimes. It's situational. One brother's dead. The connections to the brothers that they had with the Cachiros, my understanding is most, if not all, of them have been brought to justice here in the United States and are incarcerated. I think specific deterrence, when it comes to Mr. Urbina Soto, is not a consideration. All that he's been through and caused his family to go through for 10 years, he understands that and he knows it's his fault. He's not blaming anyone else for his family's suffering, and I think that's important, also.

THE COURT: Now, just for clarity sake, make sure I understand correctly, his two brothers who are still alive and were very engaged with the drug conspiracy and the transportation of drugs, they have not been arrested and extradited?

MS. SANDERSON: They have not. My understanding is he has no knowledge of where they are. They are in the wind. I don't know where they are, your Honor. And they have not been brought here. My understanding is all the connections that they've trafficked with have been, especially the witness in this case who the leader of the Cachiros, and his brother, as well.

With regard to general deterrence, the time he's been in, which we're asking your Honor to consider, has been 122 months overall. This is similar to a 144-month sentence if someone were to receive that today and serve 144 months in the Bureau of Prisons with the good time, they serve 122 months. So it's like a 144-month sentence. We submit that is sufficient general deterrence.

When it comes to punishment, obviously no one is disputing this is a serious matter and that's why he's been in prison already more than a decade. He's been separated from his family, he's missed births, his brother's death. He has his wife and two young children waiting for him, ages 5 and 13.

When he was in prison in Honduras, one of the benefits

was they got to visit him and his kids maintain that relationship. When he's in prison here, they don't have that. There's no FaceTime, there's no social visits that he gets, which is especially punishing both for him and the children. And the oldest one in particular, he's 13 now, is having a very hard time with the separation and Mr. Urbina Soto being here. He wants to play a role in his son's life, he's already a teenager, and his son needs him and he will never let his son down again. He knows how serious that is.

The entirety of the time he's been in has been harsh. In Honduras, it's a different type of harsh. I think some inmates, they have access to machetes and firearms somehow and there's prison riots, so it's a whole other level that he dealt with in Honduras.

He had COVID twice. The first time was pretty severe and he didn't receive medical care.

And then at the MDC, of course, I'm not going to belabor the conditions there, I think your Honor's aware of them. It's just extra harsh because he cannot see his family, and that will continue if he is sentenced to additional time. Extra harsh for Mr. Urbina Soto for that reason, as well. But we think that your Honor should consider those harsh conditions in imposing a below-guidelines sentence.

Now, briefly, with regard to sentencing disparities, I briefed that significantly in both submissions. What we're

asking for is not just this time-served sentence, it's asking for your Honor to consider the entirety of it. And in these cases with the extradited defendants from Honduras, Judges have routinely gone below not just the guidelines, but what the government's requesting. He's one of the only defendants who received a mandatory minimum sentence of 5 years rather than 10 years. He's got no violence and no leadership enhancements, which many of those other defendants cited did.

And I did cite cases in my original submission where defendants abuse their positions of trust — many of them are police officers and leaders in the police force — to traffic cocaine and receive between 60 months and 144 months, which is really near what we're asking for. I think the government's request of 20 years does create a disparity. It would treat Mr. Urbina Soto more like the defendants who did engage in violence or received leadership enhancements, like Mr. Valladares or Fabio Lobo, who we detailed significantly.

We submit he should not receive a sentence nearing two decades in prison. That's also a sentence for someone who hasn't already spent 10 years in prison, I would submit, someone who hasn't shown that they've taken this seriously and rehabilitated. So I think that's another reason to depart well below the guidelines here.

Judge, we submit that no further punishment is needed and no further protection of the public is needed. And I'm

happy to address any other concerns or questions that your Honor has.

THE COURT: Thank you.

Give me just a moment before I let the defendant tell me anything he would like to say.

(Pause)

Mr. Urbina Soto, I'll hear anything that you would like to say to me on your behalf in connection with this sentence.

THE DEFENDANT: Good afternoon, your Honor.

To this day for me, which will be one of the most important days of my life --

THE COURT: Excuse me one second.

Mr. Whertvine, would you assist the defendant with the microphone.

THE DEFENDANT: Good afternoon again, your Honor. Today, which, to me, is one of the most important days in my life, as it will be determined my prison time, having already accepted responsibility for the crime that I committed, I am grateful for this opportunity you have given me to speak.

At 44 years of age, 10 of the last of which I have spent in prison, husband to a wonderful wife and four children, two of which are aged 13 and 6 respectively, with deep remorse before you, your Honor, I apologize to you for my bad actions, my poor decisions which led me to commit that crime, which has

caused me so much sorrow in my life, that caused my family to fail my friends, people who trusted me, and also for having broken the laws of this country. All of this, which has been my fault, has led to separation from my wife and children when they needed me the most.

Throughout these 123 months in prison, not all has been bad. As I became acquainted with God and grew closer to God, which led to substantial changes in my life. And I can trust fully to say to you, your Honor, that I --

THE INTERPRETER: Interpreter requests a repetition.

THE DEFENDANT: I feel renewed, ready, and prepared to be reintegrated into society, to be reintegrated into society without presenting any danger to anybody with the sole desire of serving my wife and children and to serve God daily. How I would have wished for my wife and family to be here in this important moment, but a tough time, also. But I know that because of their situation, as they don't have the proper documentation to travel, they were not able to come, but I know that wherever they are, they are trusting in God and hoping for my soon return home.

I reiterate my deep remorse again, your Honor, for those bad decisions, for those bad actions, for my poor behavior which led me to commit this crime. But I am sure of one thing, that I would never again commit such a crime again that leads to harm to my family, my wife, my children, my

friends, all those who have vested their trust in me and to this great country. Nor anything that would allow me to be separated from my family again, who I need so much, your Honor. I sorrowfully express these few words, but I sincerely thank you for hearing me, your Honor. God bless you, your Honor.

THE COURT: So there's no dispute that the defendant knowingly joined an enterprise in which his brothers were deeply invested in the illegal transportation and distribution of narcotics destined for the United States, that he used his position as Mayor of Yoro Department to advance that scheme, maybe profited personally from it while his brothers may have had a longer and deeper investment in the enterprise. It was he who had, as a government official, assisted that enterprise and abused his trust to the citizens he represented and, of course, violated the law.

I find that the conditions that he endured in Honduras were particularly difficult. I will leave it for the Bureau of Prisons to determine under their regulations, as they are required to do, to figure out what time of his incarceration in Honduras should be credited against this sentence. However, I am going to recommend to them that they give him credit since at least March 26th, 2019.

I have to consider each of the 3553(a) factors, and it's clear that an appropriate punishment here is a significant sentence. It would be appropriate to consider the 20-year

sentence recommended by probation and the government.

In terms of general deterrence, that is also in line with the 20-year sentence recommended here. It would be a clear message that those holding public office will be punished severely for the crimes they commit when those crimes are a violation of U.S. law and on the scale represented by the defendant's conduct here. I found the attachments to the government's sentencing memorandum, which included trial testimony particularly helpful in that regard.

In terms of individual deterrence, that is very hard for me to evaluate. The defendant's brothers remain at large. I have no idea how easy it would be for the defendant to reintegrate himself in a drug distribution business in Honduras. It's beyond my ability to forecast, and the parties are not suggesting that that's an issue or known issue one way or the other. The defendant has emphasized to me and defense counsel's submissions were very helpful in this regard. His change of heart, the fact that he understands that what he did was a serious violation of law, and the abuse of those who had entrusted him with that high office in Honduras.

Defense counsel and the defendant have also described the defendant's personal journey and his commitment to no longer violate the law and live a law-abiding life when he returns to his family. I've tried to consider each of the factors that have been argued to me in this regard.

I ask the defendant please to stand.

I impose a sentence of 226 months' imprisonment to be followed by a term of supervised release of 4 years and require the defendant to pay a special assessment of $100.

His conditions of supervised release: He must not commit another federal, state, or local crime. You must cooperate in the collection of DNA. He must submit to deportation and not unlawfully reenter this country.

Counsel, is there any legal reason why I cannot impose the sentence I've just described as stated?

MR. ROBLES: No, your Honor.

MS. SANDERSON: No, your Honor.

However, I just want to note that the BOP will not credit -- I think there's no -- I think the parties agree, will not credit the 56 months from July 27th to March 26th, 2019 because that's part of a discharged sentence. So we're asking that because it's relevant conduct, your Honor credit him with that time because the BOP will not and cannot do that.

THE COURT: I am not going to credit him with that time. Based on what I understand -- I shouldn't say that. I'm not going to recommend to the Bureau of Prisons that they credit him for that time and I am not going to subtract that amount of time from the sentence that I impose today. However, I have considered the fact that during that term of imprisonment, he experienced very harsh conditions in a

Honduran facility, and that those charges — and I understand that was a money laundering conviction — were as a result of conduct related to the drug offense to which he pled guilty and was convicted in this court. So it informed the sentence that I imposed, but I am not going to reduce what is essentially the 18-year sentence further.

MS. SANDERSON: May I just add a bit of clarification, your Honor. In Honduras — and this is complicated, how it plays together with this case — he was arrested in July 2014 and detained on charges of both money laundering relevant to this narcotics conspiracy and firearm possession that he is being punished for.

So our position is not only it's relevant conduct, but that sentence, that detention, which he was detained for pretrial, was for firearms charges, which he's being punished for now. So that is why we're asking for your Honor to actually credit that time because it is both the same case and relevant conduct. So that's why we're really asking for your Honor to deduct that time because it's time he's served for this crime.

THE COURT: Why don't you be seated, Mr. Urbina Soto, as counsel addresses this issue further.

When you say he's being punished for it here, I take it it's because his guidelines calculation, other than just the general factual discussion of weaponry in connection with the

narcotics trafficking, I think you're specifically linking it, if I understand correctly, to the guidelines calculation, which, in the plea agreement, included a two-level enhancement because a dangerous weapon was possessed in connection with the offensive conviction; am I right?

MS. SANDERSON: That's correct, your Honor. It's part of the guidelines calculation which led me to say he's being punished for it, correct.

THE COURT: That guidelines calculation, of which there was that two-level enhancement, resulted in a range of 324 to 405 months' imprisonment.

MS. SANDERSON: Yes, your Honor.

THE COURT: Okay. Is there anything else, Ms. Sanderson, that you wanted to say on that topic?

MS. SANDERSON: No. We would just request, your Honor, that your Honor actually credit that time since it was part of the sentence -- our position is it's part of the incarceration, the conduct is all in one group, is our position, that he's spending this time for. So if you don't credit it, essentially, he's going to be in for a longer period of time.

That's all. Thank you, your Honor.

THE COURT: So I considered that argument which you made in your written submissions and I tried to pull the facts out when this sentencing proceeding began so we could have a

clear chronology of the terms of imprisonment and what they were due to. I'm not going to change my sentence, Ms. Sanderson. I appreciate that.

I order that the sentence I described on the record be imposed as stated.

Are there any open counts?

MR. ROBLES: Yes, your Honor. The government moves to dismiss those at this time.

THE COURT: Your application is granted.

I need to advise the defendant of his right to appeal.

If you're unable to pay the cost of appeal, you may apply for leave to appeal *in forma pauperis*. Any notice of appeal must be filed within 14 days of the judgment of conviction.

Ms. Sanderson, any further requests of recommendations to the Bureau of Prisons?

MS. SANDERSON: Yes, your Honor. Could you recommend Schuylkill.

THE COURT: In Pennsylvania?

MS. SANDERSON: Yes.

THE COURT: I will recommend that the defendant be designated to a facility in Pennsylvania.

Does the government have anything further?

MR. ROBLES: Your Honor, I apologize if the Court addressed this before. Is the Court imposing the special

conditions that are in the presentence report, special conditions of supervised release?

THE COURT: So the presentence report lists the mandatory conditions and the standard conditions. They are automatically part of the sentence and I impose them.

In terms of special conditions, yes, I should add that you must obey the immigration laws and comply with the directives of the immigration authorities. Of course there was the one additional condition that I imposed beyond that.

I am not going to impose the search condition because I understand the defendant's not going to be here, he's going to be deported, and I've ordered that deportation as a conditions of supervision.

Thank you.

* * *